UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

JOHNATHON LEE LATHROP-VANCE,

        Plaintiff,

   v.

BRAD CAIN, RN ASHLEY CROFT, BYRON
HEMPHILL M.D., GARTH GULICK M.D., RN
RONDA WAGNER, KIAL KAY BROTHERSON,
and CYNTHIA WAGGONER,

        Defendants.

Case No. 2:20-cv-01926-YY

OPINION AND ORDER

      Plaintiff Johnathon Lee Lathrop-Vance, a former adult in custody (AIC), claims that defendants acted with deliberate indifference to his medical needs while he was incarcerated with the Oregon Department of Corrections. Defendants have filed a Motion for Summary Judgment (ECF 111), and plaintiff has filed no response.[1] Defendants' motion is granted and this case is dismissed with prejudice for the reasons stated below.

**I.    Summary Judgment Standard**

      A motion for summary judgment is evaluated under Federal Rule of Civil Procedure 56(a), which states that "[t]he court shall grant summary judgment if the movant shows that there

---

[1] Plaintiff was released from custody, and this court granted him an extension to file a response to the motion for summary judgment until August 15, 2023. ECF 123. More than two months has passed and no response has been filed, and mail send to the address that plaintiff provided to the court has been returned as undeliverable.

1 – OPINION AND ORDER

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact by citing to the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "go beyond the pleadings" and identify in the evidentiary record "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

Only disputed facts that are outcome determinative will preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, the dispute must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Where the nonmoving party offers only a "scintilla of evidence" or evidence that is "merely colorable" or "not significantly probative" of the nonmoving party's position, summary judgment may be granted. *Id.* at 249, 252. There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The evidence of the nonmovant must be believed, and all "rational" and "reasonable" inferences are drawn in the nonmoving party's favor. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

**II.    Lack of Personal Involvement**

Plaintiff's claims as to defendants Brad Cain and Cynthia Waggoner fail because he has not established that they personally engaged in any actions that deprived him of his federally protected rights.

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Barren v.*

*Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).  A § 1983 claim also requires proof of causation, and allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  *Menefee v. Washington Cty. Cir. Ct.*, No. 3:20-CV-01647-AC, 2020 WL 7212564, at *1 (D. Or. Dec. 4, 2020) (citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)).  Thus, a plaintiff "'must plead that each government-official defendant, through the official's own individual actions, has violated the constitution.'"  *Smith v. Meyer*, No. 6:21-CV-00997-IM, 2021 WL 3172921, at *3 (D. Or. July 26, 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff alleges that Cain was responsible for crafting and implementing a policy of refusing to treat AICs for pain and sleep and was responsible for training regarding cell extractions that resulted in his injuries.  Supervisory liability is not an independent cause of action under § 1983, and a plaintiff must prove both an underlying constitutional violation and a causal connection between the supervisor's actions and the violation.  *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[a] defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation'") (quoting *Hansen v. Black*, 855 F.2d 6742, 646 (9th Cir. 1989)).  Plaintiff has failed to do so here.

Plaintiff claims that Waggoner was responsible for treating his mental health and observed some of his injuries.  However, because plaintiff has not shown how Waggoner's acts or omissions caused a constitutional deprivation, his claim against Waggoner fails as well.

### III.     Exhaustion

The PLRA prescribes that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e.  Exhaustion is a precondition to an inmate bringing any lawsuit challenging prison conditions. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  Under the PLRA, exhaustion is mandatory and the court lacks discretion to consider claims challenging prison conditions. *Id.*  The purposes of the exhaustion requirement are two-fold: to protect administrative agency authority, by providing agencies the opportunity to correct their mistakes before being brought into federal court, and by encouraging adherence to agency procedures; and to promote efficiency because resolution by an agency is typically faster and more economical than litigation in federal court. *Id.* at 89.

"Failure to exhaust under the PLRA is 'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock,* 549 U.S. 199, 204 (2007)).  The court employs a burden-shifting framework to analyze administrative exhaustion under the PLRA.  First, the defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).  Next, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Id*.  This can include "showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.*  An inmate need only exhaust those remedies that are

4 – OPINION AND ORDER

available "as a practical matter," meaning that the remedy must be "capable of use; at hand." *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005).

Because exhaustion of remedies is an affirmative defense, the defendant has the burden of raising and proving that an incarcerated plaintiff failed to satisfy the PLRA's exhaustion requirement. *Jones*, 549 U.S. at 216. Although the burden of proof remains with the defendant, the defendant is entitled to summary judgment if undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust. *Albino*, 747 F.3d at 1166, 1172.

Defendants have satisfied their initial burden of showing that an administrative remedy was available to plaintiff but he failed to exhaust the available remedy. ODOC's grievance process is set forth in the Oregon Administrative Rules. *See* OAR, Ch. 291, Div. 109. The grievance process consists of three steps—filing a grievance and two rounds of appeal—for handling AIC complaints regarding incidents or issues that personally affect them. OAR 291-109-0205; OAR 291-109-0210(3). Additionally, OAR 291-109-0225(2)(a) allows an AIC to "resubmit a grievance or grievance appeal that has been returned for correction to the AIC because it does not comply with [the] rules."

Kelcie Main, a grievance coordinator at Snake River Correctional Institution where plaintiff was incarcerated, has provided a declaration attesting that AICs are informed about ODOC's grievance review system when they first arrive at the facility. Main Decl. ¶ 8, ECF 112. Additionally, this information is contained in the AIC handbook and on grievance instructions, which are available along with grievance forms, in every housing unit. *Id.* ¶ 9.

Main describes plaintiff's grievance history as follows:

> In 2020, AIC Lathrop-Vance submitted twenty-four grievances regarding his medical care. Of those, five grievances were returned to AIC Lathrop-Vance for correction because of violations of DOC rules; one grievance was returned at the final appeal stage for the same reason. AIC Lathrop-Vance took no further action

5 – OPINION AND ORDER

> on any of those grievances. Fourteen grievances were denied at the first level. AIC Lathrop-Vance took no further action on any of those grievances and did not seek appeal of any of those denials. Two grievances were withdrawn by AIC Lathrop-Vance, one at the initial grievance level and one at the initial appeal level. The remaining grievance, in which AIC Lathrop-Vance alleged that Dr. Ashley Croft was not providing him necessary medication for his purported ADHD, was fully exhausted, and with AIC Lathrop-Vance pursuing both levels of appeal and receiving a final denial of the grievance.

Main Decl. ¶ 22, ECF 112. Thus, plaintiff failed to pursue his administrative remedies, except for his complaint that he was not being provided with his necessary ADHD medication.

The burden then shifts to plaintiff to "show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him[.]" *Williams*, 775 F.3d at 1191. Plaintiff offers no evidence here. Defendants are therefore entitled to summary judgment based on lack of exhaustion.

**IV.     Eighth Amendment**

Defendants are also entitled to summary judgment on the merits of plaintiff's deliberate indifference claim. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Suchodolski v. Peters*, No. 1:17-cv-01113-AC, 2018 WL 4926300, at *9 (D. Or. Oct. 10, 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). "[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. "It is only such

indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.*

"To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation marks and citation omitted). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Sawyer v. Cole*, No. 3:10-CV-00088-RCJ, 2012 WL 6210039, at *2 (D. Nev. Dec. 12, 2012), *aff'd*, 563 F. App'x 589 (9th Cir. 2014) (citing *Farmer*, 511 U.S. at 834). "Second, the prison official must 'know of and disregard an excessive risk to inmate health or safety.'" *Id.* (citing *Farmer*, 511 U.S. at 837).

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-104). "A medical need is serious if failure to treat it will result in 'significant injury or the unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (en banc) (quotation marks and citation omitted). Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

With respect to the second, subjective component, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835. Otherwise stated, "to violate the Eighth

Amendment, a prison official must have a 'sufficiently culpable mind.'" *Guy v. Kimbrell*, No. CIVS03-1208-JAM-CMKP, 2008 WL 2774184, at *3 (E.D. Cal. June 27, 2008), *report and recommendation adopted*, 2008 WL 3200855 (E.D. Cal. Aug. 7, 2008) (quoting *Farmer*, 511 U.S. at 834).

"However, an inadvertent or negligent failure to provide medical care does not constitute deliberate indifference." *Brown v. Perez*, No. EDCV 14–2421–CJC (JEM), 2015 WL 2153451, at *4 (citing *Estelle*, 429 U.S. at 105–06). A "difference of medical opinion ... [is] insufficient, as a matter of law, to establish deliberate indifference." *Id.* (citation and quotations omitted). "[N]or does a dispute between a prisoner and prison official over the necessity for or extent of medical treatment amount to a constitutional violation." *Toguchi*, 391 F.3d at 1058. A delay in treatment in and of itself does not constitute deliberate indifference. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). "[T]he delay must have caused substantial harm." *Id.* It is well established that a delay in non-emergency dental treatment lasting up to several months that has caused no additional physical damage and where the inmate has access to pain medication and temporary remedies does not rise to the level of a constitutional violation. *See, e.g.*, *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (recognizing that delay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation); *Banks v. Umatilla Cty. Jail*, No. 2:16-CV-00284-TC, 2018 WL 2376751, at *3 (D. Or. Mar. 26, 2018), *findings and recommendations adopted*, 2018 WL 2376092 (D. Or. May 24, 2018) (finding no significant harm where inmate was provided pain medication and salt water rinses during his seven-week wait to receive dental care). Even conduct resulting in short, periodic delays in the receipt of pain medication is not unconstitutional. *Estrada v. Sayre*, No. C

12-0592 LHK (PR), 2014 WL 3728161, at *8 (N.D. Cal. July 28, 2014), *aff'd*, 635 F. App'x 378 (9th Cir. 2016) (discussing back pain) (cited pursuant to Ninth Circuit Rule 36-3).

Here, the uncontroverted evidence is that defendants did not act with deliberate indifference. Dr. Hemphill attests that plaintiff complained of chronic neck and back pain shortly after he was admitted ODOC custody in 2017. Hemphill Decl. ¶ 5, ECF 113. Cervical, thoracic, and lumbar spine x-rays were taken and showed only mild degenerative changes within the mid cervical spine and no noteworthy degenerative changes within the thoracic or lumbar spine. *Id.* ¶ 10. Therefore, plaintiff's request for Tramadol was declined. *Id.* ¶ 112. Plaintiff agreed to try Cymbalta instead. *Id.* ¶ 13. When plaintiff continued to complain of pain, he was prescribed amitriptyline, a tricyclic antidepressant used to treat chronic pain. *Id.* ¶ 14. Dr. Hemphill subsequently increased the dosage when plaintiff complained of neck, head, and right shoulder pain, and ordered an x-ray of plaintiff's shoulder that showed no noteworthy arthritic changes. *Id.* ¶ 15.

Medical records show that plaintiff was frequently seen for various other medical complaints. *Id.* ¶¶ 18-20. When plaintiff complained of pain in his right knee, it was x-rayed and no evidence of joint effusion or arthritic changes was detected, and plaintiff was approved for physical therapy. *Id.* ¶¶ 21, 28. When plaintiff complained of chest pains, he was given an electrocardiogram and a chest x-ray that showed no signs of cardiopulmonary disease or other abnormalities. *Id.* ¶ 24. Plaintiff complained of itching in his ear, and was seen by an ear, nose, and throat specialist who diagnosed him with a small osteoma (a benign outgrowth of bone) that rarely requires treatment. *Id.* ¶ 28.

In 2019, plaintiff's knee was x-rayed again to determine whether there were any structural abnormalities that could be the cause of his pain, and there were not. *Id.* ¶ 36.

Plaintiff's lumbar and cervical spine were also x-rayed again and showed degenerative changes associated with pseudoarthritis in his lumbar spine and results consistent with his 2017 x-rays in his cervical spine. *Id.* Plaintiff did not present with apparent distress or ambulate with difficulty. *Id.* ¶ 37. Finally, abdominal imaging was also performed to determine whether there could be structural abnormalities that were the cause of his abdominal pain, but no abnormalities were found. *Id.* ¶ 44. Throughout his course of treatment, plaintiff was prescribed multiple medications to treat his pain and discomfort, as well as mental health medications. *Id.* ¶ 31 (listing medications).

Regarding ADHD, plaintiff was evaluated by a psychiatric/mental health nurse practitioner who did not diagnose him with ADHD. Croft Decl. ¶ 7, ECF 115. Moreover, Strattera, the medication that plaintiff requested to treat his perceived ADHD, was not prescribed because plaintiff's symptoms were not attributed to ADHD and it could have worsened his symptoms and caused destabilization. *Id.* ¶ 9.

In sum, the medical and mental health providers who treated plaintiff attest that their treatment comported with the national standard of care. *Id.* ¶ 47; Croft Decl. ¶ 13, ECF 115; Gulick Decl. ¶ 28, ECF 114. Plaintiff offers no evidence to the contrary. Because there is no genuine issue of material fact that defendants acted with deliberate indifference, defendants are entitled to summary judgment.

## ORDER

Defendants' Motion for Summary Judgment (ECF 111) is GRANTED and this case is dismissed with prejudice.

DATED October 17, 2023.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge